Andrew D. Cotlar, Esquire/ Attorney I.D. 204630
Law Offices of Cotlar and Cotlar
23 West Court Street
Doylestown, PA 18901
andrewdcotlar@gmail.com
(215) 345-7310                                              **Attorney for Plaintiff**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRIELLE ALLEN, AKA BRIELLE COLLINS,** | CIVIL ACTION |
| *Plaintiff* | No. _____ |
| VS. | |
| **Lehigh County Jail, Lehigh County,** *Defendants* | |

### COMPLAINT

I.  **INTRODUCTORY STATEMENT**

1. Plaintiff seeks redress for race and age discrimination in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq., the Americans With Disabilities Act, 42 U.S.C. 12101-12213, et. seq. and parallel violations of the Pennsylvania Human Relations Act (43 P.S. § 955(a)).

2. Pursuant to 42 U.S.C. §§1981a and 1983 and related federal laws, Plaintiff seeks an order for back pay and compensation from loss of benefits as well as front pay, damages for emotional distress, punitive damages, attorney's fees and any and all other relief including but not limited to reinstatement that this Court deems proper.

3. Pursuant to Eshelman v. Agere Systems, Inc., 2009 U.S. App. LEXIS 1947, 36-38 (3rd Cir. 2009), and this court's equitable powers, Plaintiff also seeks pre-judgment interest to be assessed on back pay as well as an additional award to offset the tax consequences of a

1

lump sum payment of back pay.

## II. JURISDICTION AND VENUE

4. Jurisdiction of this Court is properly invoked pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 2000e-5(f)(1), (3)), the Americans With Disabilities Act, 42 U.S.C.S. § 12117,[1] and 28 U.S.C. § 1331 (Federal question jurisdiction).

5. Jurisdiction of this Court is also properly invoked, pursuant to its supplemental jurisdiction (28 U.S.C. § 1367) over the claims of race and disability discrimination under Section 5(a) of the Pennsylvania Human Relations Act (43 P.S. § 955(a)).

6. Venue is proper, pursuant to Section 706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-5(f)(3)), as the discrimination occurred when Plaintiff was employed by Defendant located in the Eastern District of Pennsylvania.

## III. ADMINISTRATIVE EXHAUSTION

7. Pursuant to Section 706(f)(1) of Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000e-5(f)(1)), and pursuant to 42 U.S.C. 12117(a) (adopting the procedures of Title VII of the Civil Rights Act of 1964 for ADA claims), Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on or about February 11, 2021, and contemporaneously with the Pennsylvania Human Relations Commission in accordance with the work sharing arrangement between the

---

[1] "The powers, remedies, and procedures set forth in sections 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9) shall be the powers, remedies, and procedures this title provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this Act, or regulations promulgated under section 106 [42 USCS § 12116], concerning employment." 42 U.S.C.S. § 12117.

2

agencies. A true and correct copy of the EEOC Charge is attached at **EXHIBIT A** hereto an incorporated herein.

8. Plaintiff received a Dismissal and Notice of Rights on September 2, 2021. A true and correct copy of this letter is reproduced at **EXHIBIT B** hereto and incorporated herein.

## IV.   PARTIES

9. Plaintiff is a citizen of the United States of America, residing at 1904 Taft Street, Allentown, Pennsylvania, 18109 and worked for Defendant at 17 South 7th Street, Allentown, Pennsylvania 18101, from April 27, 2015 until her termination from employment on October 1, 2020.

10. Defendant is a municipal employer with more than 15 employees and an address at 17 South 7th Street, Allentown, Pennsylvania 18101.

## V.   FACTUAL ALLEGATIONS[2]

11. Ms. Allen is an African-American female, hired as a corrections officer at the Lehigh County Jail on April 27, 2015.

12. Ms. Allen worked the night-shift and suffered from diagnosed anxiety and depression, which was controlled through medication, but which was worsened by a hostile work environment directed toward her race and the institution of harsh disciplinary actions for

---

[2] Pursuant to the newly enhanced pleading standards announced in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), Ashcroft v. Iqual, 129 S. Ct. 1937, 173 Led. 2d 868 (2009) and its application to employment discrimination cases in the U.S. Court of Appeals for the Third Circuit in Gaston v. United States Postal Service, 2009 U.S. App. LEXIS 5673 (3rd Cir. 2009), Zimmer v. Secretary of Department of Homeland Security, 297 Fed. Appx. 88 (2008) and Wilkerson v. New Media Tech. Charter School, Inc., 522 F.3d 315 (3rd Cir. 2008), Plaintiff is setting forth a more detailed description of the facts in order to state a claim with enough factual matter to suggest the required elements and to raise the right to relief above the speculative level on the assumption that all the allegations are true.

minor infringements when male Caucasian officers were not as strictly penalized for similar infringements.

13. Concerning the hostile work environment, in September of 2018, Popeyes Chicken hot sauce packets were deliberately placed in her mailbox by an unknown employee, as direct provocation related to her race and/or prejudicial assumptions regarding the same.

14. Further, in May of 2020, Ms. Allen's supervisor, Sgt. Hann, loudly informed her other supervisor, Sgt. Rosado, and within Ms. Allen's presence, that "I'm not attracted to black women and wouldn't want to date one."

15. Ms. Allen filed formal written complaints about each of these acts and numerous others.

16. As a result of the unremitting hostile work environment, Ms. Allen was hospitalized on September 18, 2020 after an attempt at suicide and returned to work on September 21, 2020.

17. Ms. Allen presented a doctor's note that requested the reasonable accommodation of being assigned a day-shift instead of night-shift in order to ensure proper sleep and reduce her anxiety and depression.

18. Instead of providing this accommodation, ***within two hours***, the employer placed Ms. Allen on unpaid administrative leave, pending an investigation for a minor infraction, i.e. falling asleep on the job and/or allegedly falsifying records concerning this infraction.

19. Ms. Allen was terminated from employment on October 1, 2020 for these alleged violations, for which Caucasian male employees were not disciplined, thus making the termination pretext.

20. Further, although Defendant has referred after the fact to several other alleged infractions of employment rules, which Plaintiff vigorously disputes, and which Plaintiff herself

thoroughly documented, these allegations are mere pretext for the following reasons.

21. For example:

   a. July 11, 2017. Discipline for "twice leaving her assigned post without authority or permission." Ms. Allen left her post, once over her lunch break, and then a second time to discuss continued harassment by Officers Schreck and Search, both in person with the offenders, when the union would not intervene. This was explained to her supervisors.

   b. October 10, 2018. Discipline for leaving her post "for ten minutes without first obtaining permission." This incident related to Ms. Allen moving her car. It was common practice among the correctional officers to move their cars, particularly because many cars in the parking lot had been broken into and parking closer to the jail on the street was more secure. Ms. Allen actually did obtain advance permission from Lt. Loane. As she was leaving at door #6, Ms. Allen recalls that Sgt. Zuber, Sgt. Kalinoski, Sgt. Mead and Lt. Loane all saw her leave, and when she returned, she was questioned by Lt. Loane, at which point Ms. Allen again clarified that in fact Lt. Loane had previously given advance permission, which she denied.

   c. February 7, 2020. Discipline for cutting the umbilical cord for an inmate who had given birth. The doctor who was attending to the birth actually asked the inmate if she wanted to cut the umbilical cord herself, but Ms. Allen informed the doctor that this was not possible, because the inmate was not allowed to handle sharp objects, which was standard protocol. The doctor then specifically asked if Ms.

5

      Allen would do the service, and Ms. Allen agreed, which was accurately described in her written statement.

   d. June 26, 2020. Discipline for taking 40 minutes on her 15-minute break. The background to this is that it is common practice for correctional officers to be late in returning from their breaks, but few, if any, officers receive discipline. Here, Ms. Allen was called out for being late over the radio by Sgt. Rosado. Ms. Allen informed him that she hoped he did this to everybody else and not just her, which precipitated a retaliatory report from Sgt. Rosado.

   e. September 10, 2020. Discipline for failing to conduct psychiatric check and for falling asleep. Ms. Allen took responsibility for this incident and which occurred during her night shift when she was experiencing anxiety, depression and sleeplessness due to the continued harassment from her co-workers. Moreover, it was common for correctional officers to be late on their shifts, but many Caucasian officers were not disciplined for such infractions.

22. In fact, other Caucasian officers committed far more serious infractions than what Ms. Allen was accused of, but were given lesser punishment.

23. Examples of this differential treatment, which persist through the present, include:

   a. Several officers, such as correctional officers Bedics, Krause, Pinnock, each regularly reported late for duty but were not disciplined, and each of them were Caucasian.

   b. A Caucasian correctional officer Mogck fell asleep and failed to complete his rounds in 2017 but was neither put on leave nor fired.

   c. In 2020, a "level one" suicide-watch inmate was given a shaver by a Caucasian

   correctional officer Mujevic who was neither put on leave nor fired.

   d. On February 27, 2021, an inmate hanged himself on Officer Nelson's shift, but Officer Nelson, who is Caucasian, was never terminated from employment. He was merely put on leave and eventually was allowed to resign.

   e. With regard to officers with disabilities, Caucasians and African-Americans were treated differently. For example, Officer Henry, who is Caucasian, had glaucoma and was allowed an accommodation (no pepper spray etc.). By way of contrast, Officer Johnson, who is African-American, had MS but as soon as she informed the employer, she was taken off the team.

24. In light of the above, Defendant's proffered reasons for termination are not credible and mere pretext for discriminatory policy.

25. As a direct and proximate result of the employer's discrimination, Plaintiff lost wages and benefits of approximately $22.24 per hour full time plus overtime for approximately $65,249.58 per year, plus loss of accumulated pension not vested worth $14,197.71. See Helpin v. Trustees of the University of Pennsylvania, 10 A.3d 267 (Pa. 2010) (authorizing "total offset" approach to financial losses).

26. Plaintiff is currently working as a security officer at St. Lukes Hospital at a salary of approximately $29,000 per year, which has partially but not fully offset her financial losses.

## VI. STATEMENT OF CLAIMS

**Count I: Violation of the American with Disabilities Act: Discrimination against a Disabled Individual in Employment**

27. Plaintiff hereby incorporates the foregoing paragraphs by reference as if more fully set

7

forth at length.

28. Plaintiff is an individual with a disability, i.e. suffering from diagnosed anxiety and depression, and as the Act defines this term, she possesses a "physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C.S. § 12102(1)(A).

29. The major life activities affected include but are not limited to sleeping and staying awake at appropriate times, paying attention and concentrating on tasks.

30. Due to these restrictions, Plaintiff requested a reasonable accommodation to be able to continue work on a different shift, but Defendant refused to engage in any "interactive process," choosing instead to put Plaintiff on leave two hours after her request and subsequently fire her.

**Count II:** **Violation of the American with Disabilities Act: Discrimination against an Individual "Regarded-as" Disabled in Employment**

31. Plaintiff hereby incorporates the foregoing paragraphs by reference as if more fully set forth at length.

32. The Americans with Disabilities Act prohibits covered employers from discriminating against qualified employees on the basis of being "regarded as" having an impairment that substantially limits one or more major life activities. 42 U.S.C. 12102(1)(C).

33. The law further states that for purposes of the "regarded-as" claim, "An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the

8

impairment limits or is perceived to limit a major life activity." 42 U.S.C. 12102(3).

34. Plaintiff was regarded by Defendant as having a disability namely depression and anxiety.

35. Due to these restrictions, Plaintiff requested a reasonable accommodation, namely a day-shift instead of the night-shift to ensure she had proper sleep, but Defendant refused to engage in the "interactive" process and instead placed Plaintiff on leave and then fired Plaintiff.

**Count III:   Violation of Section 12203 of Americans with Disabilities Act: Retaliation in Employment**

36. Plaintiff hereby incorporates the foregoing paragraphs by reference as if more fully set forth at length.

37. Section 12203 of the Americans with Disabilities Act prohibits retaliation against those who oppose any unlawful act under the law or who seek to invoke the protections of the Act. 42 USCS § 12203.  See also Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (an employee's request for accommodation constitutes a protected activity for purposes of the anti-retaliation provisions of the ADA).

38. Plaintiff requested a reasonable accommodation for her disability to be able to continue work with Defendant on the day-shift instead of the night-shift.

39. However, Defendant refused to engage in the "interactive" process and instead placed Plaintiff on leave ***within two hours of her request*** and then fired Plaintiff.

40. This constituted illegal retaliation in response to Plaintiff's request for reasonable accommodation under the Act.

### Count IV: Race Discrimination in Employment

41. Plaintiff hereby incorporates the foregoing paragraphs above by reference as if more fully set forth at length.

42. Defendant's termination of Plaintiff's employment was unlawful under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq., in that: (a) Plaintiff was a member of a protected class (i.e. African-American), (b) Plaintiff was qualified for the position she occupied, (c) Plaintiff's employment was terminated by Defendant for sleeping on the job and/or allegedly falsifying records concerning this infraction, (d) and persons outside the protected class were not terminated for similar infractions.

43. Defendant's actions also violate 42 U.S.C. §1983, insofar as Defendant deprived Plaintiff of the above rights secured by the laws of the United States, and Defendant was acting under color and/or custom or usage of law as a municipal agency.

### Count V: Retaliation for Reporting or Opposing Race Discrimination in Employment

44. Plaintiff hereby incorporates the foregoing paragraphs above by reference as if more fully set forth at length.

45. Plaintiff established a long and detailed record of reporting or opposing race discrimination in employment at her place of work, beginning approximately June 6, 2017 and extending through September 18, 2020.

46. Plaintiff was terminated from employment on October 1, 2020, mere weeks after her latest report of race discrimination in employment.

47. Defendant's termination of Plaintiff's employment was mere pretext and unlawful under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3 in that: (a) Plaintiff engaged in a protected activity (i.e. and reported or opposed race discrimination in employment by Defendant); (b) Defendant terminated her employment; and (c) there was a causal connection between the protected activity and the adverse action taken, which can be implied or inferred because the latest protected activity took place mere weeks before termination.

### Count VI: Violation of the Pennsylvania Human Relations Act

48. Plaintiff hereby incorporates the foregoing paragraphs by reference as if more fully set forth at length.

49. Defendant has violated the Pennsylvania Human Relations Act (43 P.S. § 955(a), et. seq.) insofar as it has terminated Plaintiff unlawfully from his employment for reasons prohibited by the Act as follows:

   a. Based upon Plaintiff's disability
   b. Based upon Plaintiff being regarded as disabled;
   c. Based upon retaliation for Plaintiff having requested a reasonable accommodation under the Act;
   d. Based upon her race, African-American; and
   e. Based upon retaliation for Plaintiff having reported or opposed race discrimination in employment.

## V. DAMAGES

WHEREFORE, Plaintiff seeks an order for back pay and compensation from loss of benefits as

well as front pay, damages for emotional distress, punitive damages, attorney's fees, costs and any and all other relief including but not limited to reinstatement that may be proper, **not** in excess of $150,000.00. Pursuant to <u>Eshelman v. Agere Systems, Inc.</u>, 2009 U.S. App. LEXIS 1947, 36-38 (3rd Cir. 2009), Plaintiff also seeks pre-judgment interest to be assessed on back pay as well as an additional award to offset the tax consequences of a lump sum payment of back pay.

Respectfully Submitted,

_____
Andrew D. Cotlar, Esquire/ Attorney I.D. 204630
Law Offices of Cotlar and Cotlar
23 West Court Street
Doylestown, PA 18901
andrewdcotlar@gmail.com
(215) 345-7310

## VERIFICATION Pursuant to 28 U.S.C. 1746

I, Brielle Collins, verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____          9/7/21
Brielle Collins                                                    Date